## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Chapter 7** |
| **PAUL H. JACOBSON AND** | ) | |
| **JAMI J. JACOBSON** | ) | |
| | ) | **Bankruptcy No. 13-00331** |
| Debtors. | ) | |
| | ) | |
| **ONE AMERICAN BANK** | ) | |
| **f/k/a FIRST MIDWEST BANK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Adversary No. 13-09074** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **PAUL H. JACOBSON AND** | ) | |
| **JAMI J. JACOBSON,** | ) | |
| | ) | |
| Defendants. | ) | |

## TRIAL RULING

Plaintiff One American Bank (the "Bank") brought this adversary seeking a determination that Debtors' business debt to the Bank is nondischargeable. Trial occurred in Sioux City, Iowa on September 18, 2014. Jeremy B. Saint appeared on Plaintiff's behalf, and Will Forker appeared on Debtors' behalf. The Court took the matter under advisement, and parties submitted post-trial briefs. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF THE CASE

The Bank asserts that the debt is nondischargeable under 11 U.S.C.

§ 523(a)(6) as a debt for willful and malicious injury.  Debtors argue that their

actions were not willful and malicious and that the debt should be discharged.  The

Court finds that the debt is not a result of willful and malicious injury, and

therefore is dischargeable.

## FINDINGS OF FACT

Debtors Paul and Jami Jacobson are a married couple from Inwood, Iowa.

Paul Jacobson was engaged in farming, producing primarily grain and hay.  Jami

Jacobson is employed as a nurse.  She has had no input or relation to Paul's

farming business.

Debtors borrowed $150,000.00 and executed a Promissory Note to the Bank

("Promissory Note") on or about June 12, 2006 to finance Paul's farming business.

Debtors also executed an Agricultural Security Agreement ("Security Agreement")

in favor of the Bank on or about June 12, 2006 to secure the Promissory Note.  The

Security Agreement includes all of Paul's crops, livestock, supplies, equipment,

and all proceeds from those products and equipment as collateral.  When Debtors

executed the Promissory Note, the Bank was called First Midwest Bank.  It later

became One American Bank.

The Security Agreement required Debtors to make all proceeds from any sale of collateral immediately available to the Bank. To satisfy this requirement, Debtors deposited all proceeds from the farming operation in their account with the Bank. The Bank asserts that it strictly enforced this policy. Paul Jacobson testified, however, that when the Bank was still First Midwest Bank, it did not strictly enforce this rule.

During the First Midwest years of the banking relationship, when Paul needed to use proceeds to pay bills or buy supplies, he would not deposit the proceeds in the Bank. Instead, he would deposit it in an account with another bank for his own use. First Midwest Bank did not object to this practice. Paul usually informed the Bank and obtained their permission to process the proceeds outside of the Bank. The Bank, however, did not require Paul to get permission each time he needed to process a check this way. This practice was not acceptable once the Bank became One American Bank.

Paul generated gross revenue from farming of $211,720.00 in 2010 and $83,277.00 in 2011. In July 2011, Paul was involved in a four-wheeler accident. He suffered a serious brain injury. He was in the hospital for several weeks. He was unable to perform manual labor for approximately one year after the accident.

After the accident, Paul's brother, Terry Jacobson, and Paul's son, Jerico Gaertner (a/k/a Jerico Jacobson) took over Paul's farming business for 2011. After

3

Paul's accident, his son Jerico did not deposit all of the proceeds from the 2011

farm products in the Bank account.  Although Paul reported $83,277 of farm

income on his 2011 tax return, only $21,785 was deposited into Paul's account

with the Bank.  Paul testified that he used the other portion of the proceeds for his

medical bills.

Jerico started his own farming business in 2012.  Jerico occasionally

received assistance with his farming operation from his uncle, Terry, and his

father, Paul.  Paul helped Jerico find buyers for his crops, given Paul's extensive

contacts from years of farming.  Jerico also used some of Terry's and Paul's

farming equipment.

Paul had no financial input in Jerico's farming business.  Paul was

completely unable to farm in the first half of 2012.  After that Paul contributed

only his labor and list of contacts to Jerico's farming business.  Paul did not

personally farm in 2012.  He only assisted Jerico with his farming operation.

Paul's former buyers continued to contact him as they had done business in the

past.  Paul informed them that he was not farming at the time because of his injury.

Paul referred them to Jerico for their farm product needs.

The Bank has alleged that the 2012 farming operation actually belonged to

Paul, not Jerico.  The Bank also alleges that some companies dealt with Paul, but

made checks out to Jerico to avoid depositing the proceeds in Paul's account with the Bank.

The Bank has not introduced sufficient evidence to prove that Jerico's 2012 farming operation was actually Paul's farming operation. The Debtors have established, and this Court finds, that Jerico ran his own farming business in 2012. Paul merely assisted him periodically as his health allowed.

Throughout this time, Jerico provided Debtors with financial assistance. Due to his injury, Paul was unable to work much, and therefore unable to pay all of his bills. Jerico frequently wrote checks to Debtors. He also had some of his buyers make out checks directly to Paul or Jami.

Both before and after Paul's accident, a number of checks were not processed through the Debtors' account with the Bank. For example, there was a check made out to Jami from Barnes Hay & Feed in January 2011. Paul admitted he "probably" sold some crops under Jami's name. At trial, he explained that Jami is his wife, so he would sometimes have checks made out to her to take care of family finances. The companies who wrote the checks knew the Debtors well, so these companies had no problem with this practice. There were also checks in 2012 made out to either Paul or Jami at Jerico's instruction. No checks were made out to Jerico until 2012, when he had his own farming business.

Debtors filed a joint Chapter 7 bankruptcy on March 12, 2013.  Plaintiff claims that Debtors owed approximately $57,000 at the time of filing.  The debt is now $74,889 after interest and fees.

## DISCUSSION

### I.    Dischargeability of Debt Under § 523(a)(6)

The Bank argues that Debtors' debts and obligations under the Promissory Note and Security Agreement cannot be discharged in bankruptcy.  Specifically, the Bank argues that the debt is nondischargeable under 11 U.S.C. § 523(a)(6).

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6) (2013).  Section 523(a)(6) first requires the court to determine "exactly what injury the debt is for."  Blocker v. Patch (In re Patch), 526 F.3d 1176, 1181 (8th Cir. 2008).  Next, the court must determine whether the debtor both willfully and maliciously caused the injury.  Id.  Willful and malicious are two separate and distinct elements.  Fischer v. Scarborough (In re Scarborough), 171 F.3d 638, 641 (8th Cir. 1999).  The party seeking to avoid the discharge of the debt bears the burden of proving by a preponderance of the evidence that the § 523(a)(6) exception to discharge applies.  Id.  A preponderance of the evidence standard requires the trier of fact to believe that the existence of a fact is more probable than it is nonexistence.  In re Winship, 397 U.S. 358, 371–72 (1970).

6

Thus, the Bank must prove both an injury occurred and that it was "willful and malicious," by a preponderance of the evidence.

### A. The Bank sustained an injury.

The Court must first determine whether the Bank suffered an "injury" as a result of Debtors' action.  An "injury" is defined as "the invasion of any legally protected interest of another."  Farmers State Bank v. Devries (In re Devries), Bankr. No. 11-00178, Adv. No. 11-9008, 2012 WL 528223, at *6 (Bankr. N.D. Iowa Feb. 17, 2012).  To find an injury, § 523(a)(6) requires the "invasion of the legal rights of another, because the word 'injury' usually connotes legal injury (*injuria*) in the technical sense, not simply harm to a person."  Geiger v. Kawaauhau (In re Geiger), 113 F.3d 848, 852 (8th Cir. 1997).

The Bank has provided adequate evidence to show that it has sustained a legal injury.  The Bank showed Debtors' failure to properly process all farm proceeds through the Bank.  Under the terms of the Security Agreement, the Bank has a legal interest in all of Paul's farm proceeds.  Debtors' processed most, but not all, of the proceeds from Paul's farming business through his account with the Bank.  Debtors invaded the Bank's legal interests by not processing every check through the Bank, resulting in injury.  The parties do not dispute that the Bank was injured by the Debtors' failure to process all the appropriate proceeds through the Bank.  Section 523(a)(6), however, requires more than just an injury.

7

**B. The Debtors did not commit the injury willfully.**

The Court must next determine whether that injury was caused willfully.

The Supreme Court interprets "willfulness" as requiring "a deliberate or intentional

*injury*, not merely a deliberate or intentional act that leads to injury." Kawaauhau

v. Geiger, 523 U.S. 57, 61 (1998).

> The meaning of "willful" under § 523(a)(6) is controlled by the Supreme
> Court's decision in *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974,
> 140 L.Ed.2d 90 (1998). There, the Court resolved a circuit split over the
> meaning of "willful," holding that "debts arising from recklessly or
> negligently inflicted injuries do not fall within the compass of
> § 523(a)(6)." *Id.* at 64, 118 S.Ct. 974. Because the word "willful" in
> § 523(a)(6) modifies the word "injury," the Court concluded that
> "nondischargeability takes a deliberate or intentional *injury,* not merely a
> deliberate or intentional act that leads to injury." *Id.* at 61, 118 S.Ct. 974.
> Like the en banc Eighth Circuit decision it affirmed, the Court relied on
> the Restatement (Second) of Torts, observing that "the [§ 523](a)(6)
> formulation triggers in the lawyer's mind the category 'intentional torts,'
> .... [which] generally require[s] that the actor intend 'the *consequences* of
> an act,' not simply 'the act itself.'" *Id.* at 61–62, 118 S.Ct. 974 (quoting
> the *Restatement (Second) of Torts* § 8A cmt. A (1964)).

In re Devries, 2012 WL 528223, at *6. The Eighth Circuit treats the willful

element as a subjective determination, requiring proof that the debtor intended to

cause the injury or the debtor was substantially certain that the conduct would

result in an injury. Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180–81 (8th

Cir. 2008).

Thus, under § 523(a)(6) the debtor must intend to injure the creditor, not

merely intend to commit the act that ends up injuring the creditor. Kawaauhau,

523 U.S. at 61; see also United States v. Foust (In re Foust), 52 F.3d 766, 769 (8th Cir. 1995) (finding that the debtor knowingly converted a security interest and intended to injure the creditor where the debtor sold the grain subject to the security interest and then reported it stolen). Paul established that his relationship with the Bank when it was still First Midwest Bank was quite collegial and they did not always require all the proceeds to come through the Bank. It was not unusual for Paul to process a check outside of his account with First Midwest Bank, and he did not always need permission to do so. The Bank presented no evidence that Paul was told this practice could not continue, only that the Bank "generally" required the proceeds to be processed through the Bank. Therefore, while it is clear that Paul intended to commit an act that led to an injury, it is not clear that he intended the injury.

The same is true of the way Paul dealt with his 2011 farm income. The vast majority of that income was "earned" after his accident. It came from payments by Terry and Jerico after they farmed his crops for him. The mere fact that Paul failed to process all farm proceeds through the Bank does not establish that Paul, who was recovering from a serious brain injury, intended to hide the money from the Bank in order to inflict an injury on the Bank.

The Bank also argues that the checks from Jerico's farming business in 2012 are evidence of Paul's intent to injure the Bank. However, as discussed previously,

the Bank has failed to prove that Jerico's 2012 farming operation was actually

Paul's farming operation.  Paul assisted Jerico in his farming business during 2012.

That fact alone, however, does not conclusively prove it was Paul's operation.  It

proves nothing more than Paul was helping his son.

It is clear from the evidence that the Debtors did not process all of their crop

proceeds through the Bank.  The Bank, however, fails to meet its burden of proof

on the issue of whether the Debtors intended to injure the Bank.  The Court finds

the Bank has shown only that Debtors merely intended the act that led to the

injury, but has not shown that the Debtors intended the injury itself.  Therefore, the

Debtors did not commit a willful injury under § 523(a)(6).

### C. Debtors did not commit the injury maliciously.

Section 523(a)(6) requires willful *and* malicious injury to except a debt from

discharge. Therefore, the Court's finding that the injury was not willful disposes

the issue of whether the debt may be discharged—because the injury was not

willful, the debt may be discharged.  Even if the Court had found that the injury

was willful, however, the debt is still dischargeable because the Court also finds

that the injury was not committed maliciously.

For a debt to be excepted from discharge under § 523(a)(6), the debtor must

also commit the injury with malice.  A debtor commits an injury with malice if the

conduct is "targeted at the creditor . . . at least in the sense that the conduct is

10

certain or almost certain to cause . . . harm." Siemer v. Nangle (In re Nangle), 274

F.3d 481, 484 (8th Cir. 2001) (quoting Barclays Am./Bus. Credit, Inc. v. Long (In

re Long), 774 F.2d 875, 881 (8th Cir. 1985)) (alternations in original) (internal

quotation marks omitted).  "A wrongful act is malicious if . . . there exists a

'knowing wrongfulness or knowing disregard of the rights of another.'" Johnson

v. Fors (In re Fors), 259 B.R. 131, 137 (B.A.P. 8th Cir. 2001) (quoting Erickson v.

Roehnich (In re Roehrich), 169 B.R. 941, 945 (Bankr. D.N.D 1994)).  "An act may

be found to be malicious even in the absence of a specific, subjective intent to

injure." Id.  Malice requires more than simply reckless behavior by the debtor.

Fischer v. Scarborough (In re Scarborough), 171 F.3d 638, 641 (8th Cir. 1999).

    The standard for malice is similar in many ways to the standard for

willfulness discussed above.  To separate malice from willfulness, malice must

apply "only to conduct more culpable that that which is in reckless disregard of

creditors' economic interests and expectancies, as distinguished from mere legal

rights." Barclays Am./Bus. Credit, Inc. v. Long (In re Long), 774 F.2d 875, 881

(8th Cir. 1985).  Furthermore, the violation of legal rights alone is insufficient to

establish malice, absent some additional "aggravated circumstances." Id.  A

breach of a security agreement does not, in and of itself, preclude a discharge of

the associated debt, unless the debtor acts with malice by "intending or fully

expecting to harm the economic interests of the creditor." Id. at 882.  Furthermore,

a debtor's attempts to cover up his actions are a signal that the actions are wrong and that the debtor intends the harm. Farmers State Bank v. Devries (In re Devries), Bankr. No. 11-00178, Adv. No. 11-9008, 2012 WL 528223, at *7 (Bankr. N.D. Iowa Feb. 17, 2012).

The Bank argues that this case should be controlled by United States v. Foust, (In re Foust), 52 F.3d 766 (8th Cir. 1995). There, a debtor was denied a discharge under § 523(a)(6) for selling crops to distant grain elevators and depositing the proceeds in a personal account. Id. The debtor knowingly reported smaller yields than he actually produced, sold the grain to distant grain elevators, deposited the money in his personal account, and then untruthfully reported thefts of the grain to cover up his activities. Id. at 768–69. The court held that these activities demonstrated that the debtor "knowingly converted [the creditor's] security interest and knew the conversion would almost certainly harm" the creditor. Id. Thus, the court denied a discharge for willful and malicious injury under § 523(a)(6). Id.

This case is distinguishable from Foust. First, the Debtors' actions in this case rise nowhere near the level of the debtor's actions in Foust. The Debtors have not lied or reported thefts of their crops to cover up the sale. Quite the contrary, Paul has admitted to not processing some proceeds through the Bank. He simply maintained that this practice was a part of his normal relations with the Bank

12

before it became One American Bank.  The Bank argues that the Debtors tried to

cover up their 2012 farming operation by claiming that it was Jerico's.  This Court

has already determined that the 2012 farming operation was Jerico's.  The Bank

has produced little evidence to show otherwise.  The Debtors in this case simply

did not attempt to cover up their actions like the debtors in <u>Foust</u>.

Second, the Debtors were not substantially certain that their actions would

cause the Bank harm.  Paul testified that he was under the impression that his

farming equipment and machinery were worth enough that the Bank was fully

secured without the crop proceeds.  He expressed surprise that the equipment and

machinery sold for an amount that did not satisfy his debt.  Coupled with Paul's

more casual "small-town" banking relationship with the Bank before it became

One American Bank, that belief shows that Debtors were not substantially certain

that the Bank would be harmed by Debtors' failure to process all proceeds through

the Bank.  Because the Debtors did not intend to and were not substantially certain

that their actions would injure the Bank, there is no malicious injury present.

Here, the Court finds that the Debtors did not commit a malicious injury

upon the Bank under § 523(a)(6).  The Bank has established that the Debtors'

actions injured the Bank.  The Bank has not, however, met its burden of proof

concerning whether the Debtors' actions were reckless, specifically targeted at the

creditor, and/or certain or substantially certain to cause harm to the Bank.  The

13

Debtors violated the legal rights of the Bank, but there were no additional

aggravating circumstances. The Court finds that the Debtors certainly did not act

with malice on the facts before the court. Therefore, § 523(a)(6) will not bar their

debt from being discharged.

## II.    Attorney Fees Under § 523(d)

Debtors have asked for damages in the form of attorney fees. Specifically,

Debtors claim relief under 11 U.S.C. § 523(d). Section 523(d) allows a debtor to

recover attorney fees when a creditor "requests a determination of dischargeability

of a consumer debt under subsection (a)(2) . . . and such debt is discharged." 11

U.S.C. § 523(d). The Bank seeks a determination of dischargeability under

§ 523(a)(6), not § 523(a)(2). Further, the Debtors' debt to the Bank is not a

consumer debt. Moreover, § 523(d) only allows fees if the Bank's position is "not

substantially justified." The Court specifically finds the Bank's position

throughout this case was substantially justified. The Court simply found the

Debtors' evidence more persuasive. The case could have been, and probably

would have been, different if the Court did not find Debtors to be credible.

Therefore, § 523(d) does not apply, and Debtors will not be awarded attorney fees.

## CONCLUSION

The Court finds that the Bank did suffer an injury when Debtors failed to process all proceeds through the Bank.  However, the Debtors did not commit the injury willfully or maliciously.

**WHEREFORE**, the Debtors' obligation to One American Bank shall not be barred from discharge under 11. U.S.C. § 523(a)(6).

Dated and Entered: March 27, 2015

**THAD J. COLLINS**
**CHIEF BANKRUPTCY JUDGE**

15